Jason Clem #1185220
Wallens Ridge State Prison
P.O. Box 759
Big Stone Gap, Virginia 24219

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
APR 2 3 2010
JOHN F. CORCORAN, CLERK
BY: /s/ _____, DEPUTY CLERK

In The United States District Court
For The Western District of Virginia
Roanoke Division

Jason Clem,
    plaintiff,

vs.                                    Civil Action No.: 7:10-cv-00169

Gene Johnson, John Jabe, Benjamin A. Wright,        Jury Trial Demanded
sued in their individual and official capacities,
and Dewey Jennings, John Garman, Robert Bivens,
Bryan Watson, B.J. Ravizee, Major J. Combs,
Lt. B. Collins, Sgt. Cochrane, and John and Jane Does,
sued in their individual capacities,
    defendants.

### Preliminary Statement

This is a civil rights action filed by Jason Clem, a state prisoner, for damages, injunction and declaratory relief under 42 U.S.C. §1983, alleging censorship of 54 publications and non-music cd's in violation of the Freedom of Speech and Religion Clauses of the First Amendment to the United States Constitution and Equal Protection Clause of the Fourteenth Amendment to the Constitution and deprivation of property in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution.

### Jurisdiction

The court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. §1331 and §1343(a)(3).

2.

## Parties

1. The plaintiff, Jason Clem, was incarcerated at Wallens Ridge State Prison (WRSP) on February 17, 2006 and the relative events in this complaint took place while he was there.

2. Gene Johnson is the Director of the Virginia Department of Corrections. Under the Code of Virginia Sections 53.1-25 and 53.1-32(c) it is his responsibility to make general rules and rules regarding publications. He is sued in his individual and official capacities.

3. John Jabe is the Deputy Director of Operations. He has many functions relating to publications including the final authority to approve or disapprove. He is sued in his individual and official capacities.

4. Benjamin A. Wright is the chairman of the Publication Review Committee. The committee makes a determinative decision whether to approve or disapprove a publication. He is sued in his individual and official capacities.

5. Dewey Jennings was the chairman of the Publication Review Committee. He is sued in his individual capacity.

6. Robert S. Bivens is the Regional Ombudsman for the Western Region. He investigates allegations in Level II Grievance Appeals. He is sued in his individual capacity.

7. John Garman is the Western Regional Director. He responds to Level II Grievance Appeals. He is sued in his individual capacity.

8. Bryan Watson is the Warden of WRSP. He is responsible for Level I Grievance responses. He also makes decisions whether to approve or disapprove publications. He is sued in his individual capacity.

9. B. J. Ravizee is the Grievance Coordinator for WRSP. She is responsible for investigating Level I Grievances. She is sued in her individual capacity.

10. Major J. Combs is the Chief of Security for WRSP. He is sued in his individual capacity.

11. Lt. B. Collins (formerly Sgt. Collins) was the head of the property department. She made decisions whether to approve or disapprove publications. She is sued in her individual capacity.

12. Sgt. Cochrane is an officer at WRSP. He is sued in his individual capacity.

13. John and Jane Does are various DOC employees responsible for disapproving any of the publications herein. They are also any employee responsible for upholding a decision to disapprove the publications. They are sued in their individual capacities.

### Exhaustion of available administrative remedies

14. As to the disapproval of the 53 publications in Exhibit A, there are no administrative remedies to exhaust. See Exhibit B, memo clarifying that offenders cannot appeal the disapproval of publications that have been reviewed previously and placed on the disapproved publications list.

15. The exhaustion of the claim on non-music cd's is detailed in pages 1-6 of Exhibit C. Page 6 clearly notes that the plaintiff has "exhausted all administrative remedies".

16. The plaintiff's numerous attempts to appeal the confiscation of his publication are detailed pages 1-10 of Exhibit D. He was obstructed by one of the defendants from exhausting his administrative remedies. This is the basis of one of his procedural due process claims. The plaintiff would like to note that he did all in his power to comply with Operating Procedures 866.1 (Offender Grievance Procedure), 802.1 (Offender Property), and 803.2 (Incoming Publications) but due to the numerous failures by staff to comply with them he was obstructed from exhausting.

### Facts

17. On Monday, January 12, 2009 Sgt. Cochrane and another officer conducted a routine search of the plaintiff's cell, D322, at approximately 7:00 p.m.

18. During the search Sgt. Cochrane sarcastically remarked about a Bible sitting atop a Dungeons and Dragons book, "Draconomicon".

Deprivation of Property and Unconstitutional Censorship

19. Sgt. Cochrane then removed the book from the plaintiff's cell and placed it on the tier.

20. The plaintiff inquired of the Sgt. why he was confiscating his book.

21. Sgt. Cochrane responded that it was a Dungeons and Dragons book and we weren't allowed to have Dungeons and Dragons books.

7.

55. She answered that the Major might but expressed doubt that he would.

56. Plaintiff immediately ask if she would be willing to write down what she had told the plaintiff.

57. She said no without hesitation. She further explained that she had been doing this for almost 20 years and that she had a family to feed.

58. She then told the plaintiff to write property officer Buckles and that he might write it all down. She explained that he was out sick at that time but should be back soon.

59. That night the plaintiff sent a Request for Information form to officer Buckles. No response was ever received back.

60. The orders by Major J. Combs impermissibly imposes a blanket prohibition without an individual determination or a legitimate penological interest.

Unconstitutional Censorship of 53 Other Publications

61. There are 53 publications that appear on the October 2009 Disapproved Publications list issued by the Publication Review Committee that are unrelated to any legitimate penological interest. (See Exhibit A, pages 1+2)

62. Benjamin A. Wright is the Committee Chairman and he has taken part in the disapproval of some of the publications.

63. Benjamin A. Wright was the chairman when four similar books were approved by the Committee. (See Exhibit E, pages 1-3)

64. The Committee has approved two books that are almost identical to two that are on the List. (See Exhibit E, page 4)

65. Defendants John and Jane Does include current and past members of the Committee responsible for the disapproval of the challenged publications.

66. Dewey Jennings was a member of the Committee and he has disapproved some of the publications challenged herein.

67. John Jabe hears all appeals of publications. It is his responsibility to remove a publication from the List if it does not meet the criteria. He has upheld the decision on some of the books on the list.

68. John Garman hears appeals of publications. He has similar responsibilities as John Jabe. He has upheld the decision on some of the books on the List.

69. Robert Bivens investigates claims for John Garman. He has supported the decision on some of the books on the List.

70. Bryan Watson is a Facility Unit Head. It his responsibility to make decisions to approve or disapprove publications and to hear appeals of those decisions. He has disapproved some of the books on the List and upheld the decisions on appeal.

71. B.J. Ravizee investigates claims for Bryan Watson. She has supported the decision on some of the books on the list.

72. John and Jane Does includes any Facility Unit Head's that have made a decision to disapprove, any other officer who has made that decision, and anyone who has investigated or upheld the decision on appeal.

Unreasonableness and Exaggerated Response to Prison Concerns

73. As noted in 63 and 64 similar or almost identical books have been approved. (See Exhibit E, pages 1-4)

74. The prison library has many similar books on its shelves.

75. Most of the challenged books are targeted for young teens to young adults.

76. The t.v. channels given to us by the prison have extreme violence and sexual situations. In addition, the prison rents movies with extreme violence and nudity and simulated sex.

77. Each publication expresses unique views. In asmuch that they are deemed to express similar views the extent of the disapproval effectively restricts those views.

78. Allowing inmates to possess these publications will in no way effect the rights of others.

79. There are rules throughout the DOC prohibiting inmates from bringing certain items, including books, out of their cells.

80. A possible easy way to meet the regulation's goal, but allow possession of the publications, would be to create a rule prohibiting playing Role-Playing Games. Due to the harmless nature of them the plaintiff believes to be unnecessary the making of such a rule.

Censorship of Non-Music cd's

81. On August 11, 2009 John Jabe announced that offenders will no longer be allowed to purchase non-music cd's. He notes that this prohibition includes books, speeches, educational and religious materials. (See Exhibit F, pages 1+2)

82. Pursuant to Code of Virginia §53.1-25 only the Director of the DOC, Gene Johnson, may make reasonable rules regarding inmates. The Prohibition of non-music cd's is such a rule.

83. On August 24, 2009 the plaintiff tried to order 6 non-music cd's including the Bible on cd. (See Exhibit G)

84. On August 26, 2009 the plaintiff's order was denied and returned because of the new policy. (Exhibit G)

86. Defendant John or Jane Doe is the person who disapproved the order.

Equal Protection Violation

87. The August 11th memo allows inmates who had non-music cd's before the policy went into effect to have them grandfathered in. (See Exhibit F, pages 1+2)

88. Operating Procedure 802.1 (Offender Property) specifically mentions that inmates will not be allowed to have any non-conforming property to be grandfathered in.

89. The new policy does not affect inmates with tape players. They may still order non-music tapes.

90. Inmates at institutions throughout the state are similarly situated to inmates at other institutions of the same level.

91. The plaintiff is similarly situated to other inmates at level 5 institutions.

92. There are many inmates at level 5 institutions allowed to possess non-music cd's. The plaintiff is not allowed to possess non-music cd's.

10.

93. There is no legitimate penological reason for allowing some inmates to possess non-music cds and not the plaintiff.

Unreasonableness and Exaggerated Response to Prison Concerns

94. There is no legitimate reason for not allowing inmates to purchase non-music cds while allowing inmates to keep the ones they have and allowing the ordering of non-music tapes. The DOC did not provide reasoning in the memo or in the Grievances.

95. The prohibition counters the DOC's stated goal of rehabilitation.

96. Inmates may not order books on cd but can order the actual books.

97. Inmates may possess cds but only music cds (unless already possessing non-music cds). The only regulation is they may not order music cds with explicit content (presumably for a legitimate penological interest).

98. Any possible interest in restricting inmates from ordering non-music cds would be countered by allowing inmates to own the ones they already had and allowing non-music tapes to be ordered.

### Claims For Relief

99. The actions of Sgt. Cochrane, Lt. B. Collins, Major J. Combs, and B.J. Ravizee in depriving the plaintiff of his publication without a reasonable legitimate penological interest and without substantive or procedural due process was purposeful and violated the First Amendment's Free Speech Clause and Fourteenth Amendment's Due Process Clause.

100. The actions of Benjamin A. Wright, Dewey Jennings, Bryan Watson, and John and Jane Does in censoring 53 publications without a reasonable legitimate penological interest violated the Free Speech Clause of the First Amendment.

101. The failure of defendants John Jabe, John Garman, Robert Bivens, Bryan Watson, B.J. Ravizee, and John and Jane Does to act to protect inmate's rights to possess 53 publications, when it was their duty to do so, violated the First Amendment.

102. The actions of Gene Johnson and John Jabe in creating a policy that prohibits the acquisition or possession of non-music cds without a legitimate penological interest but allowing some inmates to possess them violates Free Speech and Religion Clauses of the First Amendment and Equal Protection Clause of the Fourteenth Amendment.

103. The actions of John or Jane Doe in denying the plaintiff's order for non-music cds violated the Free Speech and Religion Clauses of the First Amendment.

104. The failure of John Jabe, John Garman, Robert Bivens, Bryan Watson, and B.J. Ravizee to act to protect inmates' rights, during the plaintiff's Grievance, to possess and buy non-music cds when it was their duty to do so violated the Free Speech and Religion Clauses of the First Amendment and Equal Protection Clause of the Fourteenth Amendment.

### Relief Requested

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. The deprivation of property without process due and without a legitimate reason by Lt. B. Collins, Sgt. Cochrane, and B.J. Ravizee violated the plaintiff's rights under the First and Fourteenth Amendments to the U.S. Constitution.

2. The orders of Major J. Combs to disapprove all Dungeons and Dragons books imposes a blanket prohibition in violation of the First Amendment to the U.S. Constitution.

3. By censoring 53 publications without a legitimate penological interest by Benjamin A. Wright, Dewey Jennings, Bryan Watson, and John and Jane Does violates the plaintiff's rights under the First Amendment to the U.S. Constitution.

4. The failure to act to protect inmates' rights to possess 53 publications by John Jabe, John Garman, Robert Bivens, Bryan Watson, B.J. Ravizee, and John and Jane Does violated the plaintiff's rights under the First Amendment to the U.S. Constitution.

5. The policy created by Gene Johnson and John Jabe prohibiting the acquisition or possession of non-music cds is without a legitimate penological interest and treats similarly situated inmates differently in violation of the First and Fourteenth Amendments to the U.S. Constitution.

6. By denying the plaintiff's order for non-music cds, John or Jane Doe violated the plaintiff's rights under the First Amendment to the Constitution.

12.

7. The failure to act to protect the plaintiff's right to acquire and possess non-music cd's by John Jabe, John Garman, Robert Bivens, Bryan Watson, and B.J. Ravizee, during the plaintiff's Grievance, violated his rights under the First and Fourteenth Amendments.

B. Issue an injunction ordering defendants Johnson, Jabe, Wright or their agents to:

1. Remove the 53 publications from the Disapproved Publications List.

C. Issue an injunction ordering defendants Johnson, Jabe or their agents to:

1. Repeal the policy prohibiting the acquisition or possession of non-music cd's.

D. Award compensatory damages jointly and severally against:

1. Defendants Cochrane, Collins, Ravizee, and Combs for injuries sustained as a result of the deprivation of plaintiff's publication and subsequent denial of due process.

2. Defendants Wright, Jennings, Watson, and Does for injuries sustained by the censorship of 53 publications.

3. Defendants Jabe, Garman, Bivens, Watson, Ravizee, and Does for injuries sustained by failing to protect the plaintiff's rights to 53 publications and non-music cd's.

4. Defendants Johnson, Jabe, and Doe for injuries sustained as a result of the prohibition against the plaintiff from acquiring or possessing non-music cd's.

E. Award punitive damages against all defendants.

F. Grant such other relief as it may appear the plaintiff is entitled.

Respectfully submitted,

*Jason Clem* 4-19-10

Jason Clem #1185220
Wallens Ridge State Prison
P.O. Box 759
Big Stone Gap, Virginia 24219